IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LAWRENCE MOORE,

                              Petitioner,

     -v-                                              Civil Action No.
                                                      9:03-CV-0053 (FJS/DEP)

CALVIN WEST, Superintendent,

                              Respondent.

_____

APPEARANCES:                              OF COUNSEL:

LAWRENCE MOORE, *pro se*

HON. ANDREW M. CUOMO                      SENTA B. SIUDA, ESQ.
ATTORNEY GENERAL                          Assistant Attorney General
Syracuse Office
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

        Petitioner Lawrence Moore, a New York State prison inmate as a result

of an Onondaga County conviction for murder in the second degree, criminal

possession of a weapon in the second degree, and conspiracy in the fourth

degree, has commenced this proceeding seeking federal habeas relief

pursuant to 28 U.S.C. § 2254.  In support of his request for federal habeas

intervention, petitioner asserts several different grounds, the majority of which

were presented to and rejected by the state courts on direct appeal of his conviction and post-conviction collateral attack.

Having carefully reviewed the record, I find that Moore's claim asserting ineffective assistance of counsel remains unexhausted, but nonetheless recommend its dismissal in light petitioner's procedural default.  Turning to those claims in which petitioner asserts errors in the trial court, including by joining two separate indictments for trial and refusing petitioner's request for a missing witness jury instruction, I find that the trial court's rulings did not have any influence in determining the jury's verdict, nor did any of them constitute a error that was not harmless beyond a reasonable doubt, and therefore recommend dismissal of those claims.  Finally, I recommend that Moore's challenge to his conviction based on sufficiency of the evidence be dismissed as procedurally forfeited, and his claim that the verdict was against the weight of the evidence be denied as not cognizable on federal habeas review.

I.    BACKGROUND

The events giving rise to petitioner's convictions were set in motion in July of 1998.  Sometime during that month, according to the testimony adduced at trial, Victoria Lynn Chicko began having trouble with her 1989

2

white Pontiac Bonneville, license plate number U85 2KR.  Trial Transcript at pp. 406-09.[1]  Ms. Chicko asked petitioner Lawrence Moore, whom she knew to be her daughter's boyfriend and the father of her grandsons, to request that his brother, Joe "Tanky" Moore, repair the vehicle.[2]  TT 411-15.  At that time, Ms. Chicko had known petitioner for eleven years and acknowledged he went by the nicknames of "T" and "Shorty."  TT 412-15.  On Sunday, July 26, 1998, Joe Moore took the car to be repaired; when Ms. Chicko awoke the next day, the car had been returned.[3]  TT 415-17.

One of the prosecution's witnesses, Ahed Shehadeh, testified that on the night of July 26, 1998, he, petitioner, Joe Moore, and Robert "Robo" Mitchell had planned to rob the occupants of a trailer located at Lot C-90 in Foland's Trailer Park of money and/or drugs.  TT 665-66.  At the time, the trailer located at Lot C-90 was occupied by Santana Knaul and her boyfriend,

---

[1]      The trial transcript will be cited herein as "TT ___."

[2]      Joe Moore and Lawrence Moore were jointly tried in the state courts on the offenses described below.  Transcript of Voire Dire at 3.  To avoid potential confusion resulting from this circumstance, petitioner Lawrence Moore is referred to herein as "petitioner" or "Moore," whereas his brother, Joe Moore, will be identified either by his full name or as petitioner's brother.

[3]      It was later determined, however, that the car was not fully repaired; accordingly, Joe Moore again took the car later that same week in order to fix it.  TT 417-19.

Chris Wright, along with her son, although her boyfriend's friend and business partner, Jeffery Sakowski, also occasionally stayed at the residence.[4]  TT 267-69.  To carry out their planned robbery, Joe Moore drove the four men in a white four-door car to the trailer park at around 12:30 a.m. on the following morning. TT 666-68.

As part of the plan, Shehadeh was to knock on the door of the trailer, while petitioner, Mitchell and Joe Moore would "[s]trong-arm" the occupants to obtain the drugs and money.  TT 669.  While the three men waited by the side of the trailer, Shehadah knocked on the door twice, receiving no answer. TT 673.  The group then drove to a nearby parking lot where they debated whether they should carry out the contemplated robbery.  TT 676-77.  While Shehadeh indicated he did not want to proceed with the robbery, petitioner, Mitchell and Joe Moore returned to make a second attempt at forcibly entering the trailer.  TT 677.  Upon returning to the vehicle about fifteen minutes later, petitioner informed Shehadeh that he had knocked on the door of the trailer and introduced himself to a woman inside as "Shorty-Do-Wop," but that she had refused to open the door.  TT 678.  According to Shehadeh,

---

[4]    Jeffrey Sakowski testified he and Chris Wright, who together as partners were unlawfully engaged in the sale of drugs, resided at C-90 along with Santana Knaul. TT 502-04.

as the men drove away from the trailer park, petitioner, Mitchell and Joe Moore indicated they wanted to obtain a gun and return to Lot C-90 to carry out the planned robbery. TT 682-84. The next morning, petitioner visited Shehadeh at his job and proceeded to "call[] [Shehadeh] a couple of names" owing to his actions the previous night during the failed robbery attempt. TT 686. During that conversation, petitioner stated he was still looking for a gun to carry out the robbery. TT 686.

Ms. Knaul confirmed that someone had knocked on the door of Lot C-90 at around midnight on July 26, 1998, describing the man at the door as African American, short, dark, with big lips, and wearing a fisherman's hat which covered his eyes. TT 270-73. According to Mr. Knaul the party at the door identified himself as "Shorty" and "Shorty-Do-Wop" and asked to use the telephone, but she refused to let him in because she did not know him. TT 271-75.

Donna Lee Haley and Thomas Matthew Shelton, also residents of Foland's Trailer Park, testified they observed a suspicious light-colored vehicle in the vicinity of the trailer park at about 11:30 or 11:45 p.m. on the night of July 26, 1998. TT 214-19, 300-01. Ms. Haley noted that the license plate number of the car was U85 2KR, thereby confirming that Victoria Lynn

Chicko's car was in fact seen at the trailer park on July 26.  *See* TT 227-28.

Chris Wright also testified that upon leaving the trailer park on the night of

July 26 prior to petitioner knocking on the door of C-90, he noticed a white

four-door car in the vicinity of his trailer.  TT 360-62.

On the afternoon of August 2, 1998, while Sakowski was alone at the

trailer, an African American male, later identified by Sakowski as the

petitioner, knocked on the door and asked to purchase cocaine.  TT 520-23.

At about 6:30 p.m. on that same evening, Rosario "Pepe" Damico arrived at

the trailer.  TT 528-30.  Thereafter, at around 10:00 p.m., David Defio and

Chris Nesci arrived at the scene to purchase crack from Sakowski.  TT 531-

32.  Robert Landers, another Foland's Trailer Park resident, also later

stopped in to socialize.  TT 536.

About fifteen minutes after Landers arrived, while Sakowski, Defio and

Nesci were cooking cocaine into crack in the kitchen, and Pepe was watching

television, TT 534-35, Sakowski heard a knock at the door.  TT 538-39.

Upon opening the door, Sakowski found the petitioner, who was asking to

purchase cocaine for the second time that day.  TT 538-39.  When Sakowski

responded that he did not know what petitioner was talking about, Joe Moore

then appeared behind petitioner and asked "[a]re you ready?" while pointing

a gun at Sakowski.  TT 543, 546.  Sakowski pushed the gun at Joe Moore's face and ran into the back of the trailer, exclaiming "[h]e's got a gun."  TT 543, 549.  Shortly thereafter, Sakowski heard three gunshots.  TT 543.  After waiting for approximately ten minutes, Sakowski returned to the living room and found Robert Landers lying on the floor.  TT 553-54.  Mr. Landers was later pronounced dead at the scene.  TT 874-75.  At trial, Sakowski identified Joe Moore as the individual who brandished the gun on the night of August 2, 1998.  TT 547.

David Defio testified that from his vantage point in the kitchen of the residence, he witnessed two black men enter the trailer.  TT 460-61.  He recalled that the shooter was wearing a dark-colored hat and a flannel shirt.  TT 461.  Defio further testified that the shooter was not short.  TT 461.  He was unable to recall any additional details regarding the perpetrators.  TT 460-63.  Rosario "Pepe" Damico and Chris Nesci did not testify at trial.

Chris Wright stated he returned to C-90 in the early morning hours of August 3, 1998, about fifteen to twenty minutes after the shooting.  TT 349-52.  Wright testified that while standing in the parking lot of a nearby bank, he noticed the same white four-door vehicle he had seen at the trailer park on July 26, 1998.  TT 353.

According to the testimony adduced at a pre-trial hearing held on August 3, 1998, Sakowski identified a picture of the petitioner from among an array of photographs as "'the dude that was at my house those two times. . . . the one that did not have the gun.'"  Transcript of *Huntley*/*Wade* Hearing (12/21/98) ("H") at H 116-17.  On August 10, 1998, Sakowski also identified Joe Moore as the shooter, again from a photo array.  H 54-55.

## II.   PROCEDURAL HISTORY

### A.   State Court Proceedings

An Onondaga County grand jury indicted petitioner and his brother on October 2, 1998, charging them with the crimes of murder in the second degree (in violation of N.Y. Penal Law § 125.25(1)) and criminal possession of a weapon in the second degree (in violation of N.Y. Penal Law § 265.03), based on the incident resulting in the murder of Robert Landers.  *See* Indictment No. 98-0782-1-2 (reproduced in Appellant's Appendix on Appeal at A10).  The petitioner, Joe Moore and Shehadeh were subsequently indicted for conspiracy in the fourth degree (in violation of New York Penal Law § 105.10(1)) arising out of their agreement to rob the occupants of the trailer at Lot C-90.  *See* Indictment No. 98-1002 (Appendix at A9-11).[5]

---

[5]      Robert Mitchell was separately indicted for the same conspiracy.  H 158.

On November 12, 1998, petitioner, through his trial attorneys William W. Rose, Esq. and Salvatore Pavone, Esq., filed a pretrial motion seeking omnibus relief including, *inter alia*, suppression of (1) petitioner's statements to law enforcement, as involuntary, and (2) suppression of identification evidence of petitioner, as unduly suggestive.  (Appendix at A43-51).  A combined *Huntley/Wade* hearing was conducted on December 21, 1998 by the late Onondaga County Court Judge J. Kevin Mulroy to address those suppression requests.[6]  In an oral decision issued from the bench, Judge Mulroy denied petitioner's suppression application in all respects.  H 156-57.

On February 2, 1999, the Onondaga County District Attorney's Office moved to consolidate the two indictments against the petitioner and his co-defendants for purposes of trial.  Appendix at A29-32.  Petitioner opposed that motion.  Appendix at A38.[7]  Judge Mulroy denied the consolidation

---

[6]     Pursuant to *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838 (1965), a defendant is entitled to move for a hearing to seek suppression of statements made involuntarily.  *See Huntley*, 15 N.Y.2d at 78, 255 N.Y.S.2d at 843 (adopting Massachusetts procedure, as described in *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964), requiring judges to make express findings regarding the voluntariness of an accused's statements before the issue is submitted to the jury at trial).  Under *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967), a defendant may seek suppression of testimony regarding an allegedly improper pre-trial identification.

[7]     Petitioner included only co-defendant Joe Moore's opposition to the consolidation motion in his Appendix on appeal.  *See* Appendix at A12-21.  Although the court was not provided with a copy of petitioner's opposition papers, the record reveals that petitioner also apparently opposed the consolidation motion, voicing his objections by letter.  Appendix at A39-40.

motion without prejudice, with leave to renew upon the prosecution severing

from the indictment the conspiracy charge against Shehadeh.  Appendix at

A33-36.  After resolving the conspiracy charge against Shehadeh, *see*

Appendix at A38, the prosecution filed a second motion to consolidate the

indictments pursuant to CPL § 200.20, arguing that proof of the conspiracy

would be material and admissible as evidence-in-chief in the murder trial, and

vice versa.  Appendix at A22-28.  On February 24, 1999, Judge Mulroy

consolidated the indictments of petitioner and co-defendant Joe Moore

pursuant to the prosecution's motion, concluding that proof of the conspiracy

charge would be admissible as evidence-in-chief upon a trial of the murder

and weapon possession charges.  Appendix at A37-40.  Specifically, the trial

court held that

> the evidence of the conspiracy would be admissible to show
> motive for the murder.  Likewise, evidence that these defendants
> returned to the location of the planned murder and attempted to
> complete the robbery, is evidence of the existence of the
> conspiracy.

Appendix at A39-40.

Petitioner and co-defendant Joe Moore were ultimately tried in

connection with the resulting, consolidated, charges before a jury in

Onondaga County, beginning on March 11, 1999, with Judge Mulroy

10

presiding.  At the conclusion of that trial, both petitioner and his co-defendant, Joe Moore, were found guilty on all counts.  TT 1307-08.  As a result of the jury's verdict, on April 7, 1999, petitioner was sentenced by Judge Mulroy as a second felony offender principally to a term of imprisonment of between one and a half and three years on the fourth degree conspiracy conviction, between twenty years and life on the second degree murder conviction, and seven years on the second degree criminal possession of a weapon conviction, with those sentences to run concurrently.  *See* Transcript of Sentencing Hearing (4/7/99) ("S") at 12-14.

Petitioner appealed his conviction to the New York State Supreme Court Appellate Division, Fourth Department.  With the assistance of counsel, Moore argued in his appeal that (1) the trial court erred in refusing to give a missing witness charge to the jury; (2) the trial court abused its discretion and prejudiced petitioner by granting the prosecution's motion to consolidate the indictments; and (3) the verdict was both based on insufficient evidence, and against the weight of the evidence.  *See* Brief in Support of Appeal (5/2/00) ("App.Br.") at 43-62.  The Fourth Department issued a decision on November 13, 2000, rejecting each of petitioner's contentions, and affirming his conviction.  *People v. Lawrence Moore*, 277 A.D.2d 1051, 715 N.Y.S.2d 675

11

(4th Dept. 2000) (citing *People v. Joe Moore, III*, 275 A.D.2d 969, 713

N.Y.S.2d 420 (4th Dept. 2000)).[8]  On January 11, 2001, the Court of Appeals

denied petitioner's leave to appeal the Appellate Division's decision.  *People*

*v. Moore*, 96 N.Y.2d 737, 722 N.Y.S.2d 804 (2001).

On or about September 26, 2000, petitioner filed a *pro se* motion to

vacate his judgment of conviction pursuant to section 440.10 of the N.Y.

Criminal Procedure Law ("CPL") ("September, 2000 CPL Motion").  In that

application, petitioner alleged the discovery of new evidence subsequent to

the entry of judgment against him, and additionally asserted that his

conviction was obtained in violation of his constitutional right to counsel.  *See*

Affidavit in Support of September, 2000 CPL Motion ("Supporting Aff.") at ¶¶

1, 25-36.  Specifically, petitioner claimed that an individual named Jeremiah

Mathis had made statements regarding who committed the murders, tending

to exculpate the petitioner.  Supporting Aff. at ¶¶ 25-26.  Petitioner also

identified Edward Klein as his attorney, arguing that Mr. Klein was ineffective

in his representation of Moore by failing to notify the court or the district

attorney of this exculpatory evidence.  Supporting Aff. at ¶¶ 25-36.  Following

---

[8]      For ease of reference, *People v. Lawrence Moore*, 277 A.D.2d 1051, 715
N.Y.S.2d 675 (4th Dept. 2000) is short-cited herein as "*Lawrence Moore*."  In turn, *People
v. Joe Moore, III*, 275 A.D.2d 969, 713 N.Y.S.2d 420 (4th Dept. 2000) is referred to herein
as "*Joe Moore, III.*"

an evidentiary hearing, Onondaga County Court Judge William J. Walsh

issued a decision and order dated May 31, 2001 denying petitioner's CPL

Motion.  *See People v. Moore*, No. 98-2485 (May 31, 2001) ("September,

2000 CPL Motion Decision).  Leave to appeal that decision was denied by

the Fourth Department on June 19, 2002.  *See People v. Moore*, No. 02-

00133 (4th Dept. June 19, 2002).

        B.    This Proceeding

        Petitioner commenced this matter on January 13, 2003.[9]  Petition (Dkt.

No. 1) at 1.   In his petition, Moore claims that (1) in failing to inform the

County Court or the district attorney of alleged exculpatory information his

counsel, Edward Klein, abridged his right to effective assistance; (2)

_____

        [9]    Moore's petition initially named "Glenn S. Goord, Commissioner of the
Department of Correctional Services" as the respondent.  *See* Petition (Dkt. No. 1) at 1.
By order dated April 23, 2003, I found that pursuant to Rule 2(a) of the Rules Governing §
2254 Cases, the proper respondent is the Superintendent of the facility in which he is
currently incarcerated.  *See* Dkt. No. 3.  I thereby ordered the Clerk to substitute the
appropriate Superintendent in place of "Glenn S. Goord" as the respondent herein.  *See*
Dkt. No. 3.

        Also of note, Moore captioned his petition as brought in the "United States
District Court for the *Western* District of New York."  *See* Petition (Dkt. No. 1) at 1
(emphasis added).  This mistake, however, is inconsequential given that petitioner's
application for a writ of habeas corpus is properly filed in this court.  *See* 28 U.S.C.
2241(d) ("the application [for a writ of habeas corpus by a state prisoner] may be filed in
the district court for the district wherein such person is in custody *or* in the district court for
the district within which the State court was held which convicted and sentenced him and
each of such district courts shall have concurrent jurisdiction to entertain the application")
(emphasis added).  Petitioner was convicted and sentenced in Onondaga County, which is
within this court's geographical boundaries.

consolidation of his indictments prior to trial violated his right to due process of law under the Fifth and Fourteenth Amendments; (3) the trial court erred by failing to give the jury a missing witness charge in violation of the Fourteenth Amendment; and (4) his conviction was not supported by sufficient evidence. *See* Petition (Dkt. No. 1) at ¶¶ 13-14.[10]

_____The New York State Attorney General, acting on respondent's behalf, has responded to Moore's petition by filing an answer and a memorandum of law in opposition to that application, arguing that the claims raised in the petition either are not reviewable in a federal habeas proceeding or lack merit. *See* Dkt. Nos. 7, 8 ("Resp.Mem.").

On December 2, 2003, Moore filed a traverse reiterating the arguments previously asserted in support of his petition. *See* Traverse (Dkt. No. 13).[11] In his traverse, petitioner also sets forth additional allegations that (1) the failure of his trial counsel, now correctly identified as Salvatore Pavone, Esq., to conduct a proper investigation regarding the allegedly exculpatory

---

[10]     Petitioner submitted a typewritten petition in support of his application for a writ of habeas corpus, in which the grounds for seeking relief are recited in paragraphs 10, 13 and 14. *See* Petition (Dkt. No. 1) at ¶¶ 10, 13-14. For ease of reference, I have consecutively numbered the grounds in the order in which they appear in the typewritten petition.

[11]     For ease of reference, I also have sequentially paginated petitioner's traverse.

14

information constituted ineffective assistance; (2) the trial court erred by

failing to give the jury an unfavorable inference charge "at a minimum, if not

the missing witness charge" as well; and (3) his conviction was against the

weight of the evidence.  *See* Traverse (Dkt. No. 13) at 6-13.

This matter, which is now ripe for determination, has been referred to

me for the issuance of a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also*

Fed. R. Civ. P. 72(b).

III.   DISCUSSION

      A.   Standard Of Review

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about

significant new limitations on the power of a federal court to grant habeas

relief to a state court prisoner under 28 U.S.C. § 2254.[12]  Under the AEDPA,

"a determination of a factual issue made by a State court shall be presumed

to be correct [and t]he applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. §

---

[12]     These new standards apply to petitions filed after the Act's effective date even though they relate to convictions which predate enactment of the AEDPA.  *Williams v. Taylor*, 529 U.S. 362, 402, 120 S. Ct. 1495, 1518 (2000); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir. 2001) (citing *Williams*).

2254(e)(1); *see also Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir. 2001)

(quoting § 2254(e)(1)).  Significantly, a federal court may not grant habeas

relief to a state prisoner on a claim

> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was contrary
> > to, or involved an unreasonable
> > application of, clearly established Federal
> > law, as determined by the Supreme Court
> > of the United States; or
> >
> > 2) resulted in a decision that was based
> > on an unreasonable determination of the
> > facts in light of the evidence presented in
> > the State court proceeding.

28 U.S.C. § 2254(d); *see also Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir.), *cert.*

*denied,* 534 U.S. 886, 122 S. Ct. 197 (2001); *Boyette*, 246 F.3d at 88.

When applying this test, the Second Circuit has noted that

> [u]nder AEDPA, we ask three questions to determine
> whether a federal court may grant habeas relief: 1)
> Was the principle of Supreme Court case law relied
> upon in the habeas petition "clearly established"
> when the state court ruled? 2) If so, was the state
> court's decision "contrary to" that established
> Supreme Court precedent? 3) If not, did the state
> court's decision constitute an "unreasonable
> application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor,*

16

529 U.S. 362, 120 S. Ct. 1495 (2000) and *Francis S. v. Stone*, 221 F.3d

100, 108-09 (2d Cir. 2000)).

Because the AEDPA's restriction on federal habeas power was

premised in no small part upon the duty of state courts to uphold the

Constitution and faithfully apply federal laws, the AEDPA's exacting review

standards apply only to federal claims which have been actually adjudicated

on the merits in the state court.  *Washington v. Shriver,* 255 F.3d 45, 52-55

(2d Cir. 2001).  Specifically, as the Second Circuit explained in *Sellan v.*

*Kuhlman*, "[f]or the purposes of AEDPA deference, a state court

'adjudicate[s]' a state prisoner's federal claim on the merits when it (1)

disposes of the claim 'on the merits,' and (2) reduces its disposition to

judgment."  261 F.3d 303, 312 (2001); *see Jimenez v. Walker,* 458 F.3d 130,

135 (2d Cir. 2006).  Significantly, the Second Circuit further held that when a

state court adjudicates a claim on the merits, "a federal habeas court must

defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's

decision on the federal claim – *even if the state court does not explicitly refer*

*to either the federal claim or to relevant federal case law." Sellan, 261 F.3d*

*at 312* (emphasis added).[13,14]

---

[13]    In the past, when wrestling with interpretation and application of the
AEDPA's deference standard the Second Circuit had suggested, although leaving open

17

When a state court's decision is found to be decided "on the merits", that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1523.  Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable."  *Sellan*, 261 F.3d at 315 (quoting *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521 (O'Connor, J.)).  The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]"  *Francis S.,* 221 F.3d at 111.

---

the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under AEDPA, in which case pre-AEDPA standards would apply. *Washington*, 255 F.3d at 52-55; *see also Noble*, 246 F.3d at 98.   That court recently clarified in *Sellan*, however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

[14]     In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard.  *Sellan*, 261 F.3d at 312.  He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so.  *Id.*

     B.    Ineffective Assistance of Counsel

     In his first ground for habeas relief, Moore claims that "his trial attorney, Edward Klein Esq." possessed exculpatory information revealed to him after Moore's sentencing which he failed to divulge to the County Court or the district attorney, thereby denying constitutionally meaningful legal representation.  Petition (Dkt. No. 1) at ¶¶ 10, 13.  Following the filing of an answer, in which respondent noted that it was actually petitioner's co-defendant, Joe Moore, who was represented at trial by Attorney Klein, *see* Resp. Mem. (Dkt. No. 8) at 6, in his reply memorandum petitioner materially reshaped his ineffective assistance claim, asserting that his trial counsel, Salvatore Pavone, Esq., was ineffective for failing to investigate the same potentially exculpatory information.  Traverse (Dkt. No. 13) at 6-8.

     The state court records pertaining to petitioner's prosecution and post-conviction proceedings convincingly establish that when raising his claims of ineffective assistance of counsel in the state courts, petitioner's focus was upon Edward Klein, Esq.  It was on this basis that County Court Judge William Walsh, following an evidentiary hearing, rejected the portion of petitioner's collateral challenge to his conviction based on ineffective assistance of counsel, concluding that since Attorney Klein did not represent

the petitioner at trial, he owed him no duty of effective representation.  *See*

September, 2000 CPL Motion Decision at 8.

Considering this shift in positions, and in light of petitioner's *pro se*

status, I will analyze his ineffective assistance of counsel claim both as

challenging the actions of Edward Klein, Esq., and as directed toward the

assistance which he received from his trial counsel, chiefly Salvatore

Pavone, Esq.,

### 1.    Ineffective Assistance of Counsel as to Edward Klein

Although Moore claims in his petition that his counsel Edward Klein

provided him with constitutionally deficient legal representation, s*ee* Petition

(Dkt. No. 1) at ¶¶ 10, 13, the record establishes that Moore was represented

by William Rose and Salvatore Pavone, and not Mr. Klein.  At the

commencement of voir dire, the trial court clearly noted that "Mr. Lawrence

Moore is represented by William Rose and Mr. Salvatore Pavone.  Joe

Moore is represented by Mr. McGinty and Mr. Ed Klein."  Transcript of Voire

Dire at 3.  Moreover, following an evidentiary hearing on petitioner's

September, 2000 CPL motion, alleging ineffective assistance of counsel as

to Edward Klein, the County Court held that petitioner's claim had no basis

because Mr. Klein was Joe Moore's attorney, and accordingly had no duty to

represent petitioner's interests at trial.  *See* September, 2000 CPL Motion

Decision at 8.  The trial court further found "nothing improper with respect to

Klein's handling of this matter."  *Id.*

In a federal habeas corpus proceeding, state court determinations of

fact are presumed to be correct, and the petitioner has "the burden of

rebutting the presumption of correctness by clear and convincing evidence."

28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d

Cir. 2005); *Boyette,* 246 F.3d at 88.

The duty of effective representation, which is rooted in the Sixth

Amendment to the United States Constitution, and illuminated in *Strickland*

*v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984) and its progeny, is

inherently dependent upon the existence of an attorney-client relationship.

While undeniably dutibound to comply with the overarching requirements

inherent in his or her position, as an officer of the court, including those

arising under the Code of Professional Responsibility, an attorney's duty of

individual loyalty extends only to his or her client.  Consequently, the

constitution does not guaranty effective representation of a defendant by an

attorney who does not represent him or her.  *See, e.g., Bonin v. California*,

494 U.S. 1039, 1044, 110 S. Ct. 1506, 1509 (1990) ("The right to counsel's

undivided loyalty is a critical component of the right to assistance of counsel."); *Cinema 5, Ltd. v. Cinerama,* Inc., 528 F.2d 1384, 1386-87 (2d Cir. 1976) (stating that a lawyer owes a duty of "undivided loyalty" to his or her client equivalent to that of a fiduciary or trustee); *Baker v. Gerould*, No. 03-CV-6558L, 2005 WL 2406003, at *2 (W.D.N.Y. Sept. 29, 2005) (indicating that an attorney owes his or her client undivided loyalty "as an advocate and champion" and the client "can rely upon his [or her] undivided allegiance and faithful, devoted The clerk is directed to promptly forward copies of this order to the parties in accordance with this court's local rules") (citations and internal quotation omitted); *cf. Shapiro v. McNeil*, 92 N.Y.2d 91, 96, 677 N.Y.S.2d 48, 50 (1998) (reiterating disciplinary rule imposing ethical duties on the part of an attorney to a nonclient only when the attorney is in receipt of funds known to belong to the nonclient).

Since the record firmly establishes that Edward Klein was not petitioner's trial counsel, and he has presented no evidence to undermine the correctness of that finding by the state courts, I am unable to conclude that the trial court's determination rejecting petitioner's ineffective assistance of counsel argument was either contrary to or an unreasonable application of clearly established Supreme Court precedent. I therefore recommend

22

rejection of Moore's first ground for habeas relief, to the extent that it focuses upon representation afforded him by Attorney Klein.

## 2.   Ineffective Assistance of Counsel as to Salvatore Pavone

In his reply memorandum petitioner raises, for the first time, the claim that his trial counsel, Salvatore Pavone, Esq., was ineffective by failing to investigate exculpatory information.  *See* Traverse (Dkt. No. 13) at 6-8.  As a practical consequence of the fact that it was not raised until that late stage in the briefing process, in his answering submissions respondent does not address the petitioner's ineffective assistance of counsel argument in the context of representation by Attorney Pavone.[15]  It is clear, however, that the claims now raised by petitioner in connection with the representation provided by Attorney Pavone have not been fairly presented to the state courts.

Prior to seeking federal habeas relief, a petitioner must exhaust

---

[15]    Although respondent did not submit a sur-reply to petitioner's traverse, arguing that the court cannot consider this claim due to petitioner's failure to exhaust, the habeas corpus statute provides that a respondent's failure to raise exhaustion as a defense to a claim does not operate as a waiver of such defense.  *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").  As such, a federal district court retains the inherent authority to address a petitioner's failure to exhaust a claim *sua sponte* in the absence of the respondent's express waiver of the exhaustion requirement.  *See Lurie v. Wittner*, 228 F.3d 113, 123 (2d Cir. 2000), *cert. denied*, 532 U.S. 943, 121 S. Ct. 1404 (2001); *Russell v. Ricks*, No. 02-CV-0940, 2006 WL 1555468, at *15 (N.D.N.Y. May 31, 2006) (Kahn, J.).

available state remedies, or establish either an absence of available state

remedies or that such remedies cannot adequately protect his or her rights.

*Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. §

2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*,

515 U.S. 1118, 115 S. Ct. 2269 (1995).  The exhaustion doctrine recognizes

"respect for our dual judicial system and concern for harmonious relations

between the two adjudicatory institutions."  *Daye v. Attorney Gen. of New*

*York*, 696 F.2d 186, 191 (2d Cir. 1982).  "Comity concerns lie at the core of

the exhaustion requirement."  *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir.

2005).  Although both federal and state courts are charged with securing a

state criminal defendant's federal rights, the state courts must initially be

given the opportunity to consider and correct any violations of federal law.

*Id.* at 73.  "The chief purpose of the exhaustion doctrine would be frustrated

if the federal habeas court were to rule on a claim whose fundamental legal

basis was substantially different from that asserted in state court."  *Daye*,

696 F.2d at 192 (footnote omitted).

          This exhaustion requirement is satisfied if a federal claim has been

"fairly presented" to the state courts.  *See Dorsey v. Kelly*, 112 F.3d 50, 52

(2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509,

512 (1971)).  A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court."  *Daye*, 696 F.2d at 191.  Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature."  *Id.* at 192.

Petitioner's ineffective assistance of counsel claim regarding Salvatore Pavone was not raised either in his appeal or in support of his rejected section 440.10 application, and therefore remains unexhausted.  When a claim such as that now at issue has not previously been presented to a state court, a federal court may find that there is an absence of any available state corrective process under section 2254(b), and may thereby deem the claim exhausted, "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio,* 269 F.3d at 90 (citing *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie,* 228 F.3d 124 (finding that federal court may address merits of a habeas petition containing non-exhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile).

In this instance petitioner is barred from pursuing his ineffective

assistance of counsel claim, as relates to his actual trial attorneys, having already brought a motion to vacate his conviction under N.Y. Crim. Proc. Law § 440.10 raising ineffective assistance of counsel, albeit mistakenly addressed toward Attorney Klein.  N.Y. Crim. Proc. Law § 440.10(3)(c); *see Diaz v. Mantello,* 115 F. Supp.2d 411, 417 (S.D.N.Y. 2000); *see also Carter v. McGinnis,* No. 01-CV-655S, 2005 WL 1868882, at *7 (W.D.N.Y. Aug. 2, 2005).  Petitioner's ineffective assistance claim is therefore deemed exhausted for purposes of habeas review.

Although petitioner's ineffective assistance claim is "deemed exhausted," it is also procedurally defaulted.  *See Aparicio*, 269 F.3d at 90, 96.  Accordingly, a federal court may not engage in habeas review of the claim unless the petitioner demonstrates either 1) both good cause for and actual prejudice resulting from his procedural default, or 2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000); *Garcia v. Lewis*, 188 F.3d 71, 76-77 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).  Under this second exception, which is both exacting and intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually

26

innocent[,]" *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986); *see also House v. Bell*, ___ U.S. ___, 126 S. Ct. 2064, 2076 (2006); *Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994), "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495, 106 S. Ct. at 2649 (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 1576 (1982)).

To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566-67 (1991) (citing *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645); *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999) (citing, *inter alia*, *Coleman*). Examples of such external mitigating circumstances can include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.[16]  *Murray*, 477 U.S. at 488, 106 S. Ct.

---

[16]     It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753, 111 S. Ct. at 2566-67 (quoting *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645.

at 2645.  When a petitioner has failed to establish adequate cause for his or her procedural default, the court need not go on to also examine the issue of prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. March 21, 2006) (McCurn, S.J.) (citing *Stepney*); *Staley v. Greiner*, No. 01 Civ. 6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003) (citing *Stepney*).  In such a case, absent evidence to show the petitioner's innocence of the crime of conviction, no basis is presented to conclude that the failure to consider the merits of the federal claim would result in a fundamental miscarriage of justice, which has been interpreted as amounting to "an unjust incarceration."  *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000).

In this instance there is no basis in the record to conclude either good cause to excuse petitioner's default, or that he is actually innocent of the offense charged.  Accordingly, finding no basis to relieve petitioner of his procedural default, I recommend that the court not consider the merits of his ineffective assistance of counsel claim as relates to representation provided

28

by Attorney Pavone.

B.    Claimed Errors of the County Court[17]

Two of the grounds contained within Moore's habeas petition implicate rulings made by the trial court.  Petitioner argues that his constitutional rights were abridged when the trial court, over his objection, consolidated the two pending incidents against him for trials and again when denying his request for a missing witness jury instruction.

1.    Applicable Standard of Review

When evaluating convictions on collateral habeas challenges alleging error on the part of a trial court, habeas courts historically have inquired whether the trial court's error had a "substantial and injurious effect of influence in determining the jury's verdict." *DeVivo v. Superintendent,*

---

[17]    On July 23, 2002, co-defendant Joe Moore petitioned this court for a writ of habeas corpus alleging two of the same grounds set forth by Lawrence Moore in the present petition, arguing that (1) the trial court improperly denied defense counsel's request for a missing witness charge and (2) the trial court improperly joined the two indictments for purposes of trial.  *See Moore v. Herbert*, No. 9:02-CV-0999, 2005 WL 3591815, at *3 (N.D.N.Y. Dec. 30, 2005) (Mordue, J.).  Now-Chief Judge Mordue denied and dismissed Joe Moore's petition in its entirety.  By Order filed September 13, 2006, the Second Circuit later denied Joe Moore's motion for a certificate of appealability and dismissed his appeal, finding that he had failed to make a "substantial showing of the denial of a constitutional right."  *Moore v. Herbert*, No. 06-0522, Order (9/13/06) (quoting 28 U.S.C. § 2253 (c)(2)).

This well-reasoned precedent provides a sound and helpful basis for my evaluation of grounds two and three of Lawrence Moore's current petition alleging trial court error.

*Auburn Corr. Facility*, No. 02-CV-0840, 2006 WL 581145, at *18 (N.D.N.Y. March 8, 2006) (Kahn, J.) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22 (1993)); *see also Moore*, 2005 WL 3591815, at *3 (quoting *Brecht*).  With the enactment of the AEDPA, however, it became an "open question" in this circuit whether the applicable test on federal habeas review of an alleged state trial court error remains the standard articulated in *Brecht*, or instead an analysis of whether the state court's decision was contrary to, or an unreasonable application of *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967).[18]  *DeVivo*, 2006 WL 581145, at *18 (citing *Benn v. Greiner*, 402 F.2d 100, 105 (2d Cir. 2005) (citation omitted)); *see also Brinson v. Walker*, 407 F. Supp. 2d 456, 480-81 (W.D.N.Y. 2006); *Moore*, 2005 WL 3591815, at *3.

The Second Circuit partially resolved this question in *Gutierrez v. McGinnis*, 389 F.3d 300 (2d Cir. 2004), by holding that when a state court explicitly conducts harmless error review of a constitutional error, a habeas court must evaluate whether the state unreasonably applied *Chapman*. *DeVivo*, 2006 WL 581145, at *18 (citing *Gutierrez*, 389 F.3d at 306 and

---

[18]     In *Chapman*, the Supreme Court articulated that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828.

*Zappulla v. New York*, 391 F.3d 462, 467 (2d Cir. 2004)); *see also Moore*, 2005 WL 3591815*,* at *4.  The Second Circuit has not yet completely filled the void, having left undecided the question of whether the *Chapman* or *Brecht* test is to be applied where the state court has not performed a harmless error analysis.  *See DeVivo*, 2006 WL 581145, at *18; *Moore*, 2005 WL 3591815*,* at *4; *see also Howard v. Walker*, 406 F.3d 114, 123 (2d Cir. 2005) (citing *Gutierrez*) (other citations omitted); *Brinson*, 407 F. Supp. 2d at 480-81; *Crispino v. Allard*, 378 F. Supp. 2d 393, 406 (S.D.N.Y. 2005) (citations omitted); *Ellis v. Phillips*, No. 04-CIV-7988, 2005 WL 1637826, at *24 n.45 (S.D.N.Y. July 13, 2005 ) (Peck, M.J.) (collecting cases).

     In the present case, the Fourth Department did not engage in harmless error analysis in reviewing petitioner's claims alleging trial court error.  *Lawrence Moore*, 277 A.D.2d at 1051-52, 715 N.Y.S.2d at 675. Instead, the Fourth Department determined that Moore's contentions lacked merit and the County Court had not erred in any of the challenged rulings. *Id.* (citing *Joe Moore, III*, 275 A.2d. at 969, 713 N.Y.S.2d at 421).  In view of the uncertainty within this circuit, I will examine the issues now raised by petitioner regarding these claims utilizing both standards.  *See Moore*, 2005 WL 3591815, at *4.

2.    Consideration of Moore's Claims in Light of *Chapman* and *Brecht*

                (i)    Consolidation of the Indictments

In the second ground for relief articulated in his petition, Moore complains the trial court erred in granting the prosecution's motion to consolidate Indictment No. 98-0782, charging him with second degree murder and criminal possession of a weapon, stemming from the events which transpired on August 2, 1998, with Indictment No. 98-2485, which charged a single, fourth degree conspiracy count relating to the July, 1998 attempted robbery, thereby violating his due process rights under the Fifth and Fourteenth Amendments.  *See* Petition (Dkt. No. 1) at ¶ 14.

Prior to the commencement of trial, the prosecution moved to join the two indictments pursuant to N.Y. Criminal Procedure Law § 200.20,[19]

_____

[19]    That section provides, in relevant part, that

> [t]wo offenses are "joinable" when: (a) They are based upon the same act or upon the same criminal transaction, as that term is defined in subdivision two of section 40.10 or (b) Even though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first; or (c) Even though based upon different criminal transactions, and even

32

arguing that, although they were based on different criminal transactions, the

offenses or the criminal transactions underlying them were of such a nature

that "proof of the first offense would be material and admissible as evidence

in chief upon a trial of the second offense and proof of the second would be

material and admissible as evidence in chief upon a trial of the first."

(Appendix at A22-23) (quoting CPL § 200.20(2)(b)).  The County Court

granted the consolidation motion.  (Appendix at A37-40).  In his brief to the

Fourth Department, petitioner argued that consolidation of the conspiracy

and murder indictments had the "net effect" of suggesting that proof of one

offense established that petitioner committed the other offense.  App.Br. at

52.  Petitioner also contended that consolidation denied his right to a fair trial

by creating the substantial likelihood that the jury was unable to consider the

proof separately as it related to each offense.[20]  App.Br. at 53, 62.  On direct

_____

> though not joinable pursuant to paragraph (b),
> such offenses are defined by the same or similar
> statutory provisions and consequently are the
> same or similar in law . . . .

N.Y. Crim. Proc. Law § 200.20(2).

[20]     Although Moore's appellate brief did not explicitly argue that consolidation of
the indictments ran afoul of the United States Constitution, a habeas petitioner's federal
constitutional claims must merely be "fairly," though not necessarily explicitly, presented to
the state courts. *See Daye*, 696 F.2d at 191; *see also Holland v. Scully*, 797 F.2d 57, 64
(2d Cir. 1986).  As the Second Circuit noted in *Daye*, a petitioner has properly alerted the
state courts to the constitutional nature of his or her claims when he or she demonstrates
"(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on

appeal, the Appellate Division concluded the County Court did not abuse its

discretion in consolidating the indictments.  *See Lawrence Moore*, 277

A.D.2d at 1051, 715 N.Y.S.2d at 675 (citing *Joe Moore, III,* 275 A.D.2d at

969, 713 N.Y.S.2d at 421).  The Fourth Department articulated its reasoning

for denying this aspect of Joe Moore's appeal as follows:

> County Court did not abuse its discretion in consolidating for trial
> the indictment charging defendant with conspiracy and the
> indictment charging him with the remaining counts of which he
> was convicted (*see*, CPL [§] 200.20[4], [5]).  Evidence of the
> conspiracy to rob a specific mobile home was material and
> admissible as evidence-in-chief to establish defendant's motive
> and intent with respect to the murder that occurred in that same
> mobile home and thus the offenses charged in both indictments
> were joinable for trial purposes pursuant to CPL [§] 200.20(2)(b).

*Joe Moore, III*, 275 A.D.2d at 969, 713 N.Y.S.2d at 421 (citation omitted).

_____The primary thrust of petitioner's joinder argument to the state courts

---

state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye*, 696 F.2d at 191.  The facts alleged in Moore's brief to the Fourth Department regarding joinder of charges at a minimum call to mind fundamental due process and fair trial principles.  Moore asserted that he was denied a fair trial because consolidation of the charges resulted in the inference that proof of one crime established he had committed the other.  App.Br. at 53, 62.  This factual patterns falls within the fundamental due process rule that the prosecution is required to prove each and every element of the offense charged, *see Francis v. Franklin*, 471 U.S. 307, 313-14, 105 S. Ct. 1965, 1970 (1985), and a reasonable jurist could conclude that petitioner's claim implicated a constitutional right, *see Holland*, 797 F.2d at 65 (citing *Daye*, 696 F.2d at 193).  On this basis I find that Moore adequately alerted the state court to his constitutional claim regarding joinder of the charges, and this allegation of trial court error presents a claim which has thus been exhausted.

was to the effect that the predicate conditions under the statutory provision authorizing consolidation had not been satisfied.   While that argument was ultimately rejected, it should be noted that a finding of improper joinder under a statute or procedural rule addressing such matters does not, in itself, establish a constitutional violation.  *United States v. Lane*, 474 U.S. 438, 446 n. 8, 106 S. Ct. 725, 730 (1986).  Rather, joinder of offenses "rises to the level of a constitutional violation only if it actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process."  *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993), *cert. denied*, 511 U.S. 1059, 114 S. Ct. 1629 (1994) (quotations omitted); *Lane*, 474 U.S. at 446 n.8, 106 S. Ct. At 730 (stating that joinder violates the Constitution "only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial").

Generally speaking, joinder "'is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person . . . in the same trial is a valid government interest.'" *Herring,* F.3d at 377 (quoting *Spencer v. Texas*, 385 U.S. 554, 562, 87 S. Ct. 648, 652-53 (1967).  The Supreme Court has held that the convenience of trying different

crimes against the same person in a single trial is a valid governmental interest, and therefore can be justified under the United States Constitution. *Spencer*, 385 U.S. at 562, 87 S. Ct. at 652-53.  Consolidated prosecutions "'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *Herring, II* F.3d at 377 (quoting *Bruton v. United States*, 391 U.S. 123, 134, 88 S. Ct. 1620, 1627 (1968)).  Thus, consolidation of charges has "long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." *Id.*

Moore's improper consolidation argument is properly analyzed against the general "fairness" mandate of the due process clause as a backdrop. Habeas petitioners challenging state court convictions under that provision "bear an onerous burden" due to "significant procedural protection provided by direct review through the state system." *Herring,* 11 F.3d at 378 (citing *Brecht*, 507 U.S. at 633-34, 113 S. Ct. at 1719 (stating that a presumption of finality and legality attaches to state criminal proceedings)).  A habeas petitioner claiming a due process violation based on consolidation of offenses must therefore "go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the

joint trial." *Id.* at 377-78 (emphasis in original).[21]

In the present case, petitioner claims that consolidation was "unduly prejudicial" creating a "substantial risk that proof of one incident would improperly influence the jury's consideration of proof that relates to the other incident." *See* Traverse (Dkt. No. 13) at 8-9.   The petitioner, who bears the burden of establishing a constitutional violation, *see Whitaker v. Meachum,* 123 F.3d 714, 716 (2d Cir. 1997), has failed, however, to establish that joinder of the two indictments against him resulted in actual prejudice, thereby rendering his criminal trial fundamentally unfair.  In this regard, I concur in the determination of the Appellate Division that the evidence relating to the conspiracy to rob occupants of the premises at issue was material and admissible to establish motive with respect to the murder charge and, in turn, evidence of the murder was admissible to prove that petitioner returned to the same location to complete the attempted robbery

---

[21]     Under both state and federal law, a trial judge is afforded wide latitude to permit joinder of two or more offenses if evidence of the defendant's commission of one offense would be admissible to prove his admission of the other offense.  *See Alejandro v. Scully*, 529 F. Supp. 650, 651-52 (S.D.N.Y. 1982).  A trial court's exercise of that discretion will be reversed on appeal "only where the defendant suffered such prejudice from a joint trial of two or more counts that the trial court may be said to have abused its discretion by refusing to order separate trials."  *Id.* at 651.  Habeas corpus review of a state court's consolidation of offenses is more limited than direct appellate review and examines only whether the joinder violated a petitioner's federal constitutional rights.  *Id.*; *see also Rolling v. Fischer*, 433 F. Supp. 2d 336, 343 (S.D.N.Y. 2006).

he had conspired to commit.  *See Moore*, 2005 WL 3591815, at *10; *see also Lawrence Moore*, 277 A.D.2d at 1051-52, 715 N.Y.S.2d at 675 (citing *Joe Moore, III*, 275 A.D.2d at 969, 713 N.Y.S.2d at 421).

While some modicum of potential prejudice is inherent in any case where multiple crimes are tried together, the record reveals that the trial court was both sensitive to this prospect and took measures to eliminate its adverse effects.  The jury at petitioner's trial was instructed on at least five separate occasions that evidence of each crime was to be considered separate and distinct.  On one such occasion, the trial court charged the jury as follows:

> Despite the fact that more than one defendant is on trial, you are required to render a separate verdict with respect to each defendant separately. . . . You've also observed the People have joined in the single count – in the single indictment counts of conspiracy arising on one particular date and counts of murder and possession of a weapon . . . occurring on another date, allegedly.  These crimes are joined in a single indictment solely for the convenience of the Court.  Ordinarily the fact that a defendant is charged with one crime constitutes no proof he committed another crime also charged in a single indictment.  Therefore, unless the Court specifically instructs you otherwise, you are required to separate in your mind the evidence applicable solely to each crime and return a verdict on each crime solely based on the evidence that is applicable to that particular crime.

TT 1180-81.  When reviewing the evidence presented by witness Jeff

Sakowski and articulating the elements of each crime charged, the trial court again cautioned the jury to consider the conspiracy charge separate and distinct from the murder and weapons possession charges. TT 1227, 1230, 1263. At the conclusion of its jury charge, the court further instructed that the jury could consider "whether any statements or overt acts proved would support or tend to be evidence toward the August 3rd allegation" of murder in the second degree and criminal possession of a weapon. TT 1276-77. Courts may properly consider such instructions in evaluating a habeas claim alleging prejudice from a joint trial. *See, e.g., Davis v. Kelly*, 2 F. Supp. 2d 362, 366-67 (W.D.N.Y. 1998). Although "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively", the Supreme Court has "explicitly accepted that '[t]his type of prejudicial effect is acknowledged to inhere in criminal practice,'" but it is justified, in part, because the jury is expected to follow instructions limiting the evidence to its proper purpose. *Herring*, 11 F.3d at 377 (quoting *Spencer*, 385 U.S. at 562, 87 S. Ct. at 652-53). A jury is presumed to have followed the instructions charged by the court "'unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be

'devastating' to the defendant.'" *Id.* at 378 (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8, 107 S. Ct. 3102, 3109 (1987)) (internal citations and quotations omitted); *see also Smith v. Barkley*, No. 99-CV-0257, 2004 WL 437470, at *4 n.4 (N.D.N.Y. Feb. 18, 2004) (Sharpe, J.) (citing *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S. Ct. 727, 732-33 (2000)).

In this case, there is no overwhelming probability of jury confusion; in fact, the evidence points to the contrary. During deliberations, the jury explicitly asked the court to reread portions of witness testimony and the court's jury instructions, specifically inquiring regarding murder in the second degree. TT 1290, 1294. Based on the substance of the jury charges and the jury's requests during deliberations, the jury appears to have evaluated the evidence as to each count separately and distinctly. Petitioner's argument that the jury was improperly influenced by the proof of murder as to the conspiracy charge, and vice versa, is based on mere speculation. Petitioner's contentions do not demonstrate an "overwhelming probability" of juror confusion and are insufficient to establish actual prejudice in support of his due process claims. See *Rolling v. Fischer,* 433 F. Supp. 2d 336, 344-45 (S.D.N.Y. 2006); *see also Shand v. Miller*, 412 F. Supp. 2d 267, 272 (W.D.N.Y. 2006) (noting that although the trial court did not specifically

instruct the jury to consider the evidence of each charge separately, proof of

the crimes was presented separately to the jurors where the court instructed

the jury separately on each count of indictment); *Bridgewater v. Walker*, No.

99 Civ. 2420, 2003 U.S. Dist. LEXIS 629, at *23-24 (S.D.N.Y. Jan. 13, 2003)

(finding that jury was not confused by consolidation of offenses where it

"was instructed, on at least two separate occasions, to evaluate separately

the evidence presented in connection with each of the offenses"), *adopted*,

2003 U.S. Dist. LEXIS 12941 (S.D.N.Y. July 28, 2003).

In sum, I find that petitioner has failed to sustain his burden of

establishing that the joinder of the two indictments prejudiced him or

otherwise deprived him of his right to a fair trial.  On this basis, I likewise

conclude that Moore has failed to demonstrate that consolidation of those

indictments was an error that had a substantial and injurious effect or

influence in determining the jury's verdict, or alternatively, constituted an

error that was not harmless beyond a reasonable doubt.[22] I therefore

recommend dismissal of ground two of Moore's petition.  *See, e.g., Moore,*

2005 WL 3591815, at *10-11; *Willis v. Duncan*, No. 00-CV-4171, 2003 WL

_____

[22]     For these same reasons, Chief Judge Mordue previously denied co-
defendant Joe Moore's request for habeas relief based on the joinder of those
indictments. *See Moore*, 2005 WL 3591815, at *11, *appeal dismissed*, *Moore v. Herbert*,
No. 06-0522, Order (9/13/06).

21845664, at *5-6 (E.D.N.Y. Aug. 4, 2003) (denying habeas claim alleging

that joinder of weapons and narcotics charges with homicide charge relating

to death of petitioner's two-year-old son deprived petitioner of fair trial); *Scott*

*v. Kelly*, No. 98-CV-811, 1999 WL 1390251, at *4 (W.D.N.Y. 1999) (finding

trial counsel not ineffective in failing to seek severance of counts charging

criminal possession of a weapon and criminal possession of a controlled

substance from unrelated charges alleging attempted murder, assault,

robbery, attempted robbery; petitioner failed to establish that joinder of the

offenses rendered his trial unfair).

### (ii)   Denial of Missing Witness Instruction

Petitioner also contends that the trial court's refusal to charge the jury

regarding the prosecution's failure to call certain individuals who witnessed

some of the material events, violated his rights under the Fourteenth

Amendment. *See* Petition (Dkt. No. 1) at ¶ 14.  This ground relates to a

request by counsel for petitioner and co-defendant Joe Moore, made

following the conclusion of the prosecution's case at trial, that the trial court

provide the jury with a missing witness instruction in light of the

prosecution's failure to call Chris Nesci and Rosario "Pepe" Damico as

witnesses, despite their presence in the trailer on the night of the Landers

murder.[23]   TT 916-18.   Defense counsel argued that these two individuals
witnessed the events in the trailer on the night of the murder, were available
to the prosecution, and "would naturally be expected to testify favorable to
the prosecution."  TT 917-18.  The prosecution opposed the requested
charge, arguing that Nesci and Damico "had nothing to add to the events of
the homicide" and were not under the prosecution's control.  TT 918-19.
The trial court declined to include the requested instruction in its jury charge.
TT 1058, 1203-04.  In his appellate brief, Moore contends the trial court's
decision denied him due process under the New York State and United
States Constitutions.  App.Br. at 49.

    The Fourth Department determined petitioner's contention that the trial
court erred in denying his request for a missing witness charge lacked merit.

---

[23]    "A missing witness charge allows the jury to draw an adverse inference that
the testimony of uncalled witnesses would have been unfavorable to the party that
declined to call them."  *Glover v. Bennett*, No. 98-CV-0607, 2001 WL 1862807, at *5
(N.D.N.Y. Feb. 26, 2001) (Sharpe, M.J.) (citation omitted), *adopted*, *Glover v. Bennett*, No.
98-CV-0607 (Dkt. No. 23) (N.D.N.Y. Sept. 27, 2001) (Mordue, J.), *aff'd without op.*, *Glover
v. Bennett*, No. 01-2633 (No. 98-CV-0607, Dkt. No. 30) (2d Cir. Mar. 4, 2003), *cert.
denied*, *Glover v. Bennett*, 539 U.S. 907, 123 S. Ct. 2258 (2003).

    In his reply memorandum, petitioner submits that he was entitled to "an
unfavorable inference charge at minimum, if not the missing witness charge."  *See*
Traverse (Dkt. No. 13) at 10.  By definition, a missing witness charge is an instruction
permitting an unfavorable inference against the party who declines to elicit testimony from
the absent witness.  Accordingly, I construe petitioner's request for an "unfavorable
inference charge at minimum" as simply reiterating his initial request for a "missing
witness" charge, and is not a separate ground for habeas relief.

*Lawrence Moore*, 277 A.D.2d at 1051-52, 715 N.Y.S.2d at 675.  The

appellate court referenced its earlier decision on appellate review of Joe

Moore's conviction, addressing the identical argument, wherein it

determined the record did not "indicate that the witnesses would have

provided testimony favorable to the People or that the witnesses were in the

People's control."  *Joe Moore, III*, 275 A.D.2d at 969, 713 N.Y.S.2d at 421.  I

must therefore consider whether this finding represents an error which had a

substantial and injurious effect or influence in determining the jury's verdict,

or alternatively, whether the County Court's evidentiary ruling constitutes an

error that was not harmless beyond a reasonable doubt.

_____In alleging an error of state law in a jury instruction, a habeas court

must consider (1) whether the petitioner was erroneously deprived of a jury

instruction mandated under state law and (2) if petitioner was erroneously

denied the instruction under state law, whether the error was sufficiently

harmful to violate a right guaranteed by federal law and to make the

conviction unfair.  *See Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001)

(citing *Cupp v. Naughton*, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973)).

    In New York, the decision to grant a request for a missing witness

charge is committed to the sound discretion of the trial court.  *Morales v.*

44

*Walsh*, No. 02-CV-6045, 2003 WL 23185770, at *15 (E.D.N.Y. Oct. 30,

2003); *see also Sagendorf-Teal v. County of Rennselaer*, 100 F.3d 270, 275

(2d Cir. 1996) (discussing the discretion of a trial court to give a missing

witness charge).  Under New York law, a party may only obtain a missing

witness instruction when he or she satisfies the following criteria:

> First, the witness's knowledge must be material to the trial.
> Second, the witness must be expected to give noncumulative
> testimony favorable to the party against whom the charge is
> sought.  This has been referred to as the 'control' element, which
> requires the court to evaluate the relationship between the
> witness and the party to whom the witness is expected to be
> faithful.  Third, the witness must be available to that party.

*Moore*, 2005 WL 3591815, at *5 (citing *People v. Macana*, 84 N.Y.2d 173,

177, 615 N.Y.S.2d 656, 657-68 (1994)).  As Chief Judge Mordue

thoughtfully observed in *Moore*, "[w]here a petitioner seeks federal habeas

relief based upon a claim that he was wrongfully denied a missing witness

charge, the burden to be shouldered by the petitioner is substantial."  *Id.*;

*Jones v. Spitzer*, No. 01-Civ. 9754, 2003 WL 1563780, at *39 (S.D.N.Y.

March 26, 2003) (Gorenstein, M.J.), *adopted*, 2005 WL 167605 (S.D.N.Y.

Jan. 25, 2005) ("Cases are legion that have refused to grant habeas relief to

petitioners based on an alleged failure to provide a missing witness

charge.") (collecting cases).  A state court's failure to give a missing witness

charge "will rarely support reversal or habeas relief since reviewing courts recognize the aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense than any reviewing court." *Moore*, 2005 WL 3591815, at *5 (citing *Glover*, 2001 WL 1862807, at *5) (other citation and internal quotations omitted).

At petitioner's trial, the prosecution opposed the requested missing witness charge on the grounds that the two witnesses were unable to add testimony regarding the night of the murder beyond that already adduced at trial, and that their testimony would, at best, be cumulative of that already presented.  The prosecutor explained the basis for his failure to call Nesci and Damico, stating:

> We heard from Mr. DeFio.  We heard from Mr. Sakowski and I know for a fact that neither Mr. Damico nor Mr. Nesci would be able to identify anyone as being the shooter or – they could not identify anyone, so to call them would not add anything to this trial.  So it's not as if they would be here to testify favorably or disfavorably for anyone.  I can't understand how . . . they're under our control.

TT 918-19.  In finding that the trial court properly denied the charge request, the Fourth Department determined the record was devoid of any evidence that the witnesses would have provided testimony favorable to the

46

prosecution or that they were in the prosecutor's control. *Lawrence Moore*, 277 A.D.2d at 1051-52, 715 N.Y.S.2d at 675 (citing *Joe Moore, III*, 275 A.D.2d at 969, 713 N.Y.S.2d at 422).[24]  "A state court's finding that prospective witnesses are not within the control of either party is a factual determination of a state court that must be rebutted with clear and convincing evidence." *Moore*, 2005 WL 3591815, at *6 (citing *Jones*, 2003 WL 1563780, at *39).  Moreover, "[a] court's determination as to whether a witness would have provided favorable testimony has similarly been found to be a factual finding of the court." *Id.* (citing *Smith v. Dixon*, 766 F. Supp. 1370, 1389-90 (E.D.N.C. 1991), *aff'd*, 996 F.2d 667 (4th Cir. 1993)).

Petitioner has failed to provide any evidence, let alone clear and convincing evidence, to rebut the Fourth Department's factual determination that Nesci and Damico were not in the prosecution's control.  Moreover, petitioner has not set forth any evidence that Nesci and Damico would have provided favorable testimony for the prosecution.  Moore cannot base his

---

[24]     As Chief Judge Mordue previously noted, the record does not appear to reflect the trial court's rationale for denying the request by defense counsel for the instruction.  Rather, the trial court initially reserved decision on the motion, TT 919, and the charge was not discussed again on the record until after the trial court had already denied the motion.  TT 1057-58.  This deficiency in the record is of no moment, however, given that the Fourth Department provided a fairly thorough analysis of the trial court's decision on the request to charge.

claim for habeas relief solely on an unsubstantiated trial court error of state
law, given that habeas corpus review is not available for errors of state law.
*Wilson v. Superintendent, Attica Corr. Facility*, No. 9:00-CV-0767, 2003 WL
22765351, at *9 (N.D.N.Y. Nov. 24, 2003) (citing *Estelle v. McGuire*, 502
U.S. 62, 67-69, 112 S. Ct. 475, 479-81 (1991)).  Rather, petitioner must
demonstrate that an error of constitutional proportions occurred in the state
court proceeding.  *See Whitaker,* 123 F.3d at at 716 (citing *Walker v.
Johnston*, 312 U.S. 275, 286, 61 S. Ct. 574, 579 (1941) (stating that
petitioner has the burden of "sustaining his allegations by a preponderance
of evidence" on collateral review)); *see also Cato v. Superintendent*, No. 04-
CV-0985, 2006 WL 3440445, at *8 (W.D.N.Y. Nov. 30, 2006) (quoting
*Estelle*, 502 U.S. at 68, 112 S. Ct. at 480); *Lovacco v. Kelly*, No. 99-CV-
3094, 2005 WL 2482518, at *3 (S.D.N.Y. Oct. 7, 2005) (citation omitted).  By
failing to establish even that Nesci and Damico were in the prosecution's
control or that they would have testified favorably for the prosecution,
petitioner has failed to meet this burden.

Since petitioner has not established that the denial of the missing
witness charge was erroneous under state law in any way, *a fortiori*, he has
failed to demonstrate that this alleged trial court error had a substantial and

injurious effect or influence in determining the jury's verdict, or, alternatively,

that the claimed error was not harmless beyond a reasonable doubt.

Therefore, I recommend the denial of this aspect of Moore's petition.

*Accord Moore*, 2005 WL 3591815, at *6 (denying that ground of Joe Moore's

petition alleging trial court error for failure to provide missing witness charge

for the same reasons as stated herein).

     C.   Insufficiency of Evidence

     In his fourth ground for relief, Moore claims that his conviction was

based on insufficient evidence, in violation of the Fourteenth Amendment.

*See* Petition (Dkt. No. 1) at ¶ 14.  Petitioner argues that the testimony

adduced at trial, including that of Ahed Shehadeh and Jeff Sakowski, was

inadequate to prove his guilt beyond a reasonable doubt.  *See* Traverse

(Dkt. No. 13) at 11-12.  The Appellate Division held that petitioner's

contention regarding insufficiency of the evidence was not preserved for

review,[25] and in any event, lacked merit because the evidence established

---

[25]    In support of this determination, the Appellate Division relied on New York Court of Appeals precedent articulated in *People v. Gray*, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 175 (1995), which provides that a defendant must make his or her position known to the court in order to preserve a claim for insufficient evidence. *Lawrence Moore*, 277 A.D.2d at 1052, 715 N.Y.S.2d at 675.  *Gray* further mandates that "even where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error."  *Gray*, 86 N.Y.2d at 19, 629 N.Y.S.2d at 175 (quoting *People v. Cona*, 49 N.Y.2d 26, 33 n.2, 424 N.Y.S.2d 146, 148 (1979)).

the essential elements of the crime beyond a reasonable doubt.  *Lawrence*

*Moore*, 277 A.D.2d at 1052, 715 N.Y.S.2d at 675 (citing *Joe Moore, III*, 275

A.D.2d at 970, 713 N.Y.S.2d at 422).

> ### 1.   Independent and Adequate State Grounds

As a matter of comity, and in keeping with the principles of federalism,

a federal court ordinarily will not review a federal claim presented in a

habeas petition if it has been rejected by the state courts on a ground which

is both "independent and adequate[.]" *Coleman*, 501 U.S. at 736, 11 S. Ct.

at 2558; *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006); *Brown v.

Greiner*, 409 F.3d 523, 532 (2d Cir. 2005).  While a procedural forfeiture is

typically the product of a failure to comply with a state's requirements

regarding timely presentation of issues to the court, the question of whether

a default discerned by a state court is sufficiently adequate and independent

to preclude federal habeas review is governed by federal law.  *Monroe*, 433

F.3d at 241.

Addressing the issue of adequacy, the Second Circuit has observed

that:

> a procedural bar will be deemed adequate only if it is based on a
> rule that is firmly established and regularly followed by the state
> in question.  When a federal court finds that the rule is
> inadequate under this test the rule should not operate to bar

> federal review.  Nonetheless, the principles of comity that drive
> the doctrine counsel that a federal court that deems a state
> procedural rule inadequate should not reach that conclusion
> lightly or without clear support in state law.

*Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal citations and

quotation marks omitted).  As may be self-evident, a state court

determination is sufficiently independent, for purposes of this rule, if it is

divorced from and bears no relation to the merits of the federal law claim

presented.  *See Brown*, 409 F.3d at 532.  When addressing the question of

procedural forfeiture, a court should presume that there is no independent

and adequate state ground for a state court decision when the decision

"'fairly appears to rest primarily on federal law, or to be interwoven with the

federal law, and when the adequacy and independence of any possible state

law ground is not clear from the face of the opinion[.]'" *Coleman*, 501 U.S. at

733, 111 S. Ct. at 2556 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41,

101 S. Ct. 3469, 3476 (1983)).

     For a federal court to deny habeas review based on the independent

and adequate state ground doctrine, it must be clear that the state court

actually relied upon the procedural bar as an independent basis for its

disposition of the claim.  *Fama*, 235 F.3d at 809.  Where, as in this case, a

state court has expressly found both a failure to preserve the argument for

appellate review and alternatively or "in any event" that the argument lacks

merit, the procedural bar applies. *Id.* at 810 n.4 (citing *Glenn v. Bartlett*, 98

F.3d 721, 724-25 (2d Cir. 1996) and *Velasquez v. Leonardo*, 898 F.2d 7, 9

(2d Cir. 1990)).[26]  Indeed, "federal habeas review is foreclosed when a state

court has expressly relied on a procedural default as an independent and

adequate state ground, even where the state court has also ruled in the

alternative on the merits of the federal claim." *Velasquez*, 898 F.2d at 9.

The record establishes that the state court rejected Moore's

insufficiency of the evidence argument as "not preserved" and "in any event .

. . without merit." *Lawrence Moore*, 277 A.D.2d at 1052, 715 N.Y.S.2d at

675.  Such a determination by a state court constitutes a finding of

procedural default, and my review of this ground is therefore conditioned

upon identifying a proper basis, if any, for excusing or overlooking

petitioner's default.

---

[26]     If there is ambiguity, however, as in "when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Jiminez*, 458 F.3d at 139; *Fama*, 235 F.3d at 810; *see also Coleman*, 508 U.S. at 735, 111 S. Ct. at 2557.  Moreover, in a case where both procedural and substantive arguments have been advanced by the parties but no opinion is issued by the state court explaining its rejection of a claim, a federal court may properly assume that the state court based its decision on state procedural grounds absent "good reason" to believe the state courts' silence represents a decision to deny the claim on its merits. *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993).

2.     Potential Relief from Procedural Default

I have previously reviewed the bases upon which a procedural default may be overlooked by a federal court, sitting in habeas.[27]  Having reviewed the record, I find that Moore has not offered any cause for his failure to preserve his insufficiency of the evidence claim for appellate review, and accordingly discern no basis to excuse petitioner's default.  Although petitioner faults his trial counsel for failure to investigate allegedly exculpatory evidence, *see* Traverse (Dkt. No. 13) at 6-8, Moore failed to argue in the state courts that his counsel rendered ineffective assistance by failing to preserve his sufficiency claim for appellate review.  Since petitioner could have, but did not, challenge assistance of counsel regarding preservation of his sufficiency claim on direct appeal, petitioner now is precluded from returning to the state courts at this point to allege his counsel was ineffective in this regard.  *See* CPL § 440.10(2)(c) (precluding collateral attack where, although sufficient facts appeared on the record with respect to the issue raised, defendant unjustifiably failed to raise such issue on direct appeal).  Any claim by Moore alleging ineffective assistance for failure to preserve his sufficiency claim is, in itself, procedurally barred.

---

[27]     *See, pp.* 25-27, *ante.*

Accordingly, even had petitioner raised an ineffective assistance claim, based on counsel's failure to preserve this ground for appellate review, in the present petition it could never constitute "cause" because it is well-established that "[a] petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred."  *Reyes*, 118 F.3d at 140; *see also Murray*, 477 U.S. at 489, 106 S. Ct. at 2646; *Zelaya v. Mantello*, 00-CIV-0865, 2003 WL 22097510, at *5 (S.D.N.Y. Sept. 10, 2003); *Santiago v. McGinnis*, No. 00 Civ. 5870, 2002 WL 31946709, at *4 (E.D.N.Y. Oct. 21, 2002); *Carey v. Superintendent*, 99-CV-0821, slip op. at 5 (N.D.N.Y. Sept. 29, 2003 ) (McAvoy, S.J.) (citing *Murray*).

Since petitioner cannot establish cause for his procedural default, I need not decide whether he suffered actual prejudice because federal habeas relief is generally unavailable as to procedurally defaulted claims unless *both* cause and prejudice is demonstrated.  *See Stepney*, 760 F.2d at 45.   Having found no basis to find cause for petitioner's default, and having concluded from a review of the record that he has not established his actual innocence of the crimes for which he was convicted, I therefore recommend that his sufficiency of the evidence ground be rejected as

procedurally forfeited.[28]

D.   Weight of the Evidence

In his reply memorandum, interspersed among his allegations regarding sufficiency of the evidence, petitioner also challenges his conviction as being against the weight of the evidence adduced at trial.  *See* Traverse (Dkt. No. 13) at 11-13.  On direct appeal, the Fourth Department held that the verdict was not against the weight of the evidence.  *Lawrence Moore*, 277 A.d.2d at 1052, 715 N.Y.S.2d at 675.

Moore's claim that his conviction was against the weight of the evidence does not provide a basis for habeas relief.  "Weight of the evidence review is a product of New York state statute and therefore merely a state law issue." *Wilson* , 2003 WL 22765351, at *9 (citing NY CPL § 470.15) (other citation omitted).  As was earlier stated, "[i]t is well established that

---

[28]     Respondent has not argued that petitioner is procedurally barred from asserting this claim.  *See* Resp.Mem. (Dkt. No. 8) at 12-14.  Although a district court can raise a petitioner's procedural default as a basis for the denial of federal habeas relief, *sua sponte*, *see, e.g., Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (citing *Yeatts v. Angelone*, 166 F.3d 255, 262 (4th Cir. 1999)), the Second Circuit has held that before a claim in a petition may properly be dismissed on procedural grounds on the court's own initiative, a district court must afford the petitioner notice of its intention to dismiss the claim on a procedural basis and an opportunity to be heard.  *Acosta*, 221 F.3d at 124. Accordingly, if petitioner believes that this claim should not be dismissed as procedurally defaulted, he must raise this contention in timely-filed objections to this report and recommendation.

habeas corpus review is not available for errors of state law." *Id.* at *9 (citing *Estelle*, 502 U.S. at 67-69, 112 S. Ct. at 479-81).  Federal habeas relief is therefore not available to review a claim that challenges the weight of the evidence.  *Hyde v. Shine*, 199 U.S. 62, 84, 25 S. Ct. 760, 764 (1905) ("In the Federal courts . . . it is well settled that upon habeas corpus the court will not weigh the evidence."); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996); *Brown v. Superintendent*, No. 02 Civ. 4810, 2003 WL 1948803, at *4 (S.D.N.Y. Apr. 23, 2003) (citing *Maldonado*, 86 F.3d at 35) (other citation omitted); *Cardena v. Giambruno*, No. 03 CIV 3313, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004) (stating that challenge to weight of evidence is not cognizable upon federal habeas review); *Kearse v. Artuz*, 99 CIV 2428, 2000 WL 1253205, at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief.").  Accordingly, to the extent that petitioner raises a claim regarding the "weight" of the evidence, I recommend this aspect of the petition be denied and dismissed.

## IV.   SUMMARY AND RECOMMENDATION

Petitioner's newly minted, unexhausted claim that his trial counsel, Salvatore Pavone, Esq., was ineffective by failing to investigate allegedly

exculpatory information is a claim which he has procedurally forfeited by not raising in the state courts on direct appeal or in a previously filed motion under N.Y. Criminal Procedure Law § 440.10.  Petitioner's assertion that he was denied constitutionally effective representation based upon the actions of Edward Klein, Esq. is patently meritless, since that attorney did not represent the petitioner at trial.  Turning to petitioner's claims of constitutional deprivations based upon trial court errors, I find that he has failed to demonstrate the denial of any constitutional right as a result of the trial court's consolidation of his indictments for trial and refusal to provide the jury with a missing witness instruction.  In addition, the record before the court firmly establishes that petitioner has procedurally defaulted on his claim alleging insufficient evidence to support his conviction, and has not shown cause for his procedural default relating to this claim or that he is actually innocent of the crimes of which he was convicted.  Finally, petitioner's contention that his conviction was against the weight of the evidence is not cognizable on federal habeas review.  It is therefore hereby

**RECOMMENDED**, that the petition in this matter be **DENIED** and **DISMISSED** in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties

have ten days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d

Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

The clerk is directed to promptly forward copies of this order to the

parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      February 20, 2007
            Syracuse, NY